UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| OCTAL INC.,<br>OCTAL SAOC-FZC<br><br>    Plaintiffs,<br><br>  v.<br><br>United States,<br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Court No. 22-135 |

# COMPLAINT

Plaintiffs OCTAL Inc., and OCTAL SAOC-FZC (collectively "OCTAL" or "Plaintiffs"), by and through their counsel, state the following claims against Defendant, the United States:

1. Plaintiffs seek judicial review of the U.S. International Trade Commission's ("USITC") affirmative determination in the five-year sunset reviews of the antidumping orders on polyethylene terephthalate ("PET") Resin from Oman.  *See Polyethylene Terephthalate (PET) Resin Canada, China, India, and Oman; Determination,* 87 Fed. Reg. 19,531 (Apr. 4, 2022); *see also Polyethylene Terephthalate (PET) Resin Canada, China, India, and Oman*, Inv. Nos. 701-TA-531–532 and 731-TA-1270–1273 (Review), USITC Pub. 5298 (Mar. 2022) ("Views and Final Report").

## JURISDICTIONAL STATEMENT

2. The Court has jurisdiction over this action pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(I) to review a final affirmative determination made by the USITC under 19 U.S.C. § 1675(c). This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).

## STANDING OF PLAINTIFFS

3. Plaintiff OCTAL Inc., is a U.S. importer of the subject merchandise. Plaintiff OCTAL SAOC-FZC is a foreign producer and exporter of subject merchandise. Plaintiffs are, therefore, interested parties as defined in section 771(9)(A) and 516A(f)(3) of the Tariff Act of 1930, as amended, 19 U.S.C. §§ 1677(9)(A) and 1516a(f)(3). Plaintiffs fully participated in the proceeding being challenged. Accordingly, Plaintiffs have standing to bring this action under section 516A(d) of the Tariff Act of 1930, 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(e).

## TIMELINESS OF THIS ACTION

4. The USITC published its affirmative final determination in the *Federal Register* on April 4, 2022. *See Polyethylene Terephthalate (PET) Resin Canada, China, India, and Oman; Determination,* 87 Fed. Reg. 19,531 (Apr. 4, 2022). Therefore, Plaintiffs commenced this action within the time period specified in 19 U.S.C. § 1516a(a)(2)(A)(i) and 28 U.S.C. § 2636(c).

5. Plaintiffs filed their Summons for this action on May 2, 2022. Thus, Plaintiff timely filed this Complaint within 30 days of the filing of the Summons in this

action, as required by the time limits set forth in 19 U.S.C. § 1516a(a)(2)(A) and Court Rule 3(a)(2).

## STATEMENT OF FACTS

6.       On March 10, 2015, domestic producers of PET Resin filed antidumping duty and countervailing duty petitions alleging that the domestic industry was materially injured or threatened with material injury by reason of unfairly-traded imports of PET resin from Canada, China, India, and Oman. On March 17, 2015, the U.S. Department of Commerce ("Commerce") initiated the investigation. *See Polyethylene Terephthalate Resin From Canada, China, India, and Oman; Institution of Antidumping and Countervailing Duty Investigations and Scheduling of Preliminary Phase Investigations,* 80 Fed. Reg. 13,889 (Mar. 17, 2015).

7.       The USITC determined in April 2016 that a domestic industry was materially injured by reason of less-than-fair-value imports of PET Resin from Canada, China, India, and Oman. *See Polyethylene Terephthalate Resin From Canada, China, India, and Oman,* 81 Fed. Reg. 26,832 (Apr. 5, 2016). On May 6, 2016, the Commerce published antidumping duty orders on imports of PET resin from Canada, China, India, and Oman. See *Certain Polyethylene Terephthalate Resin From Canada, the People's Republic of China, India, and the Sultanate of Oman: Amended Final Affirmative Antidumping Determination (Sultanate of Oman) and Antidumping Duty Orders*, 81 Fed. Reg. 27979 (May 6, 2016).

8. On April 1, 2021, the USITC instituted the first five-year reviews of the orders to determine whether revocation of the antidumping orders on PET resin from Canada, China, India, and Oman would likely lead to the continuation or recurrence of material injury to the domestic industry. *Polyethylene Terephthalate (PET) Resin From Canada, China, India, and Oman; Institution of Five-Year Reviews*, 86 Fed. Reg. 17197 (Apr. 1, 2021).

9. Subsequently, the domestic producers submitted a joint response to the notice of institution. OCTAL as a respondent interested party also submitted responses to the notice of institution on May 3, 2021.

10. On July 7, 2021, the USITC found that the domestic interested party group response was adequate for all reviews and that the respondent interested party group response with respect to Oman was adequate for the review of the order on subject imports from Oman. Therefore, the USITC decided to conduct a full review with respect to the antidumping duty order concerning PET resin from Oman. *Polyethylene Terephthalate (PET) Resin From Canada, China, India, and Oman; Notice of Commission Determination To Conduct Full Five-Year Reviews*, 86 Fed. Reg. 37343 (July 15, 2021).

11. Based on these responses and other information on the record, the USITC Staff issued its Pre-hearing Report on January 10, 2022. Thereafter, all interested parties submitted pre-hearing briefs. A public hearing was held on January 27, 2022, followed by the submission of the parties' post-hearing briefs on February 7, 2022. The USITC Staff's Final Report was issued on March 1, 2022. *See Polyethylene*

*Terephthalate (PET) Resin From Canada, China, India, and Oman; Scheduling of Full Five-Year Reviews*, 86 Fed. Reg. 58,101 (Oct. 14, 2021).

12. On March 30, 2022, the USITC rendered its conclusion that revocation of the antidumping orders on PET resin from Canada, China, India, and Oman would be likely to lead to continuation or recurrence of material injury to an industry in the United States within a reasonably foreseeable time. This USITC decision was published in the *Federal Register* on April 4, 2022. *See Polyethylene Terephthalate (PET) Resin Canada, China, India, and Oman,* 87 Fed. Reg. 19,531 (Apr. 4, 2022). The written views of the USITC, which include the USITC's rationale for its affirmative injury determination, are set forth in the USITC's report. *See* Views and Final Report.

## STATEMENT OF CLAIMS

**Count One:** The USITC adopted an unlawful interpretation of "likely" that was contrary to the statute

13. Plaintiffs herby re-allege and incorporate by reference paragraphs 1 through 12.

14. Under the governing statutory provisions, the USITC was required to render a determination as to "whether revocation of {the PET resin Oman AD} order. . . would be likely to lead to continuation or recurrence of material injury {by the domestic industry} within a reasonably foreseeable time." 19 U.S.C. § 1675a(a)(1). In rendering this determination, this same statutory provision requires that the USITC "shall consider the likely volume, price effect and impact" of imports. *Id*.

15. "Likely" means what is probably going to occur in the future – what is more likely than not to occur. *See Siderca, S.A.I.C. v. United States*, 29 CIT 572, 574, 374 F. Supp. 2d 1285, 1288 (2005) ("Various opinions of the Court have held that the term "likely" should be interpreted to mean "probable," or, to put it another way, "more likely than not.'") Moreover, another statutory provision, see 19 U.S.C. § 1516a(b), requires that the USITC's determination be supported by substantial evidence. And so, these two statutory provisions require that the USITC's conclusions about what is "likely" need to be grounded in the record evidence. There must be record evidence that certain situations are more likely than not to occur, and those inferences about the future likely situation must be grounded in that record evidence.

16. In the underlying PET resin sunset proceeding, the USITC did not adhere to these statutory requirements. Rather, with respect to several different subsidiary conclusions, the USITC did not analyze whether a particular event was "likely" and failed to demonstrate that its conclusion about likelihood was supported by substantial evidence. Accordingly, the USITC's conclusion was contrary to the statute and therefore unlawful.

**Count Two:** **The USITC's Conclusion That Subject Imports From Oman Should be Cumulated with Other Subject Countries Was Not Supported by Substantial Evidence and Is Otherwise Not In Accordance With Law**

17. Plaintiffs herby re-allege and incorporate by reference paragraphs 1 through 16.

18. Pursuant to 19 U.S.C. § 1675a(a)(7), the USITC has the discretion not to cumulate subject imports that compete under distinct conditions of competition. Indeed, the underlying statutory provision requires that the USITC "shall not cumulatively asses the volume and effects of the subject merchandise in a case in which it determines that such imports are likely to have no discernible adverse impact on the domestic industry." *Id*. This provision also explicitly incorporates the "likely" standard for such a determination to cumulate.

19. Moreover, under long-standing past USITC practice, the USITC will refuse to cumulate imports from a particular subject country whenever the evidentiary record indicates that the conditions of competition under which the particular country will participate in the U.S. market are so different from the other subject countries that it should be examined separately.

20. In the underlying proceeding, the evidentiary record demonstrated the following:

- Unlike other subject producers, OCTAL has undergone a dramatic change in corporate structure that will make its economic incentives the same as U.S. producers;

- OCTAL has stayed in the U.S. market, shipping commercially significant volumes; in contrast, China and India largely abandoned the market.

- OCTAL has a precisely known capacity and has been operating at high rates of capacity utilization; in contrast, China and India have large amount capacity about which little is known but public data suggests excess capacity.

- OCTAL has priced reasonably, and conducted administrative review to prove its prices were reasonable; in contrast, China and India did no reviews

- OCTAL has been shipping at prices that generally oversell domestic prices; in contrast, China and India have not been in the market so there is little evidence about their current pricing

- OCTAL was a significant presence in the market in 2021, a year when the domestic industry experienced record performance; in contrast, China and India were out of the market so the Commission does not know how their volume would have affected 2021 domestic industry performance.

21. In its Determination the USITC either ignored substantial evidence regarding whether Omani imports of PET Resin would likely compete in the domestic market under distinct conditions of competition, or completely failed to articulate why the contrary evidence should be dismissed. As such the USITC's conclusion regarding whether to cumulate imports from Oman with the other subject countries for the purpose of its broader analysis was not supported by substantial evidence and is otherwise not in accordance with law.

**Count Three:** **The USITC's Conclusion That Revocation of the Oman AD Order Would be Likely to Lead to Continuation or Recurrence of Material Injury to an Industry in the United States Within a Reasonably Foreseeable Time Is Not Supported by Substantial Evidence and Is Otherwise Not In Accordance With Law**

22. Plaintiffs herby re-allege and incorporate by reference paragraphs 1 through 21.

23. Pursuant to 19 U.S.C. § 1675a(a), when making a determination on the likely continuation or recurrence of material injury to the domestic industry, the USITC shall take into account prior injury determinations, any improvement in the state of the industry, and whether the industry is vulnerable to material injury if the order is revoked. Additionally, the Commission must consider the likely volume, price effects, and impact of imports of the subject merchandise on the industry if the orders are revoked. These provisions also explicitly incorporates the "likely" standard for such a determination about future effects.

24. The USITC's analysis under those provisions was flawed because the USITC either ignored substantial evidence or completely failed to articulate why the contrary evidence should be dismissed. Specifically, the USITC failed to address adequately important evidentiary issues related to, *inter alia*, capacity limitations at OCTAL's Oman facility, lack of incentives to divert shipments to the United States market, pricing data demonstrating that an adverse effect was unlikely, and that it was unlikely that there would be an adverse impact on the domestic industry if the Orders were revoked. As such USITC's analysis is unsupported by substantial evidence and otherwise not in accordance with law.

## **PRAYER FOR JUDGMENT AND RELIEF**

WHEREFORE, for the foregoing reasons, Plaintiffs pray that this Court enter judgment as follows:

(A)   Enter judgment in favor of Plaintiffs;

(B)   Hold as unlawful the USITC's final injury determination that is the subject of this Complaint,

(C)   Remand this proceeding the USITC with instructions to publish revised final injury determination in conformity with the Court's decision; and

(D)   Grant Plaintiffs such additional relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Daniel L. Porter

Daniel L. Porter
James P. Durling
James Beaty
Ana Amador

**Curtis Mallet-Prevost, Colt & Mosle LLP**
1717 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
202-452-1717

*Counsel for Plaintiffs*

Dated:  May 2, 2022